NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACKSON, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>FAUVER, et al.,<br><br>　　　　Defendants. | Civ. No. 98-2890 (WGB)<br><br>**O P I N I O N** |

Darren M. Gelber, Esq.
WILENTZ, GOLDMAN & SPITZER
A Professional Corporation
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095

Emily A. Kaller, Esq.
Kellie A. Lavery, Esq.
GREENBAUM, ROWE, SMITH, RAVIN, DAVIS & HIMMEL, LLP
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095

　　　　Attorneys for Plaintiffs

Stephen D. Holtzman, Esq.
Jeffrey S. McClain, ESq.
HOLTZMAN & McCLAIN, P.C.
A Professional Corporation
Linwood Commons, Suit F-6
2106 New Road
Linwood, New Jersey 08221

　　　Attorneys for Defendants Correctional Medical Services,
　　　Inc., Dr. Trevor Parks, Dr. James Neal, Bertha Robinson, and
　　　Carol Holt

**BASSLER, SENIOR DISTRICT JUDGE:**

　　　Plaintiffs are 15 former and current inmates at East Jersey

State Prison ("EJSP") that filed suit against Correctional Medical Services, Inc. ("CMS") and four CMS officials (collectively, "CMS Defendants"), as well as six officials and employees of the New Jersey Department of Corrections ("DOC") (collectively "DOC Defendants").[1] Plaintiffs brought federal law claims alleging violations of their Eighth Amendment rights due to Defendants' deliberate indifference to their medical needs, as well as malpractice claims under New Jersey state law.

The CMS Defendants moved for summary judgment on Plaintiffs' federal and state law claims, and the DOC Defendants joined the motion. In a 108-page Opinion and fifteen Orders filed September 28, 2004, the Court granted Defendants' motions for summary judgment with regard to Plaintiffs Eugene Drinkard, Walter Griggs, Dennis Hanna, John Howard, Geraldo Izquierdo, Abdul Kahliq, Derrick Lewis, Thomas Musto and Isa Saalahudin. The Court dismissed without prejudice the pendant state law claims of those plaintiffs. With regard to Plaintiffs Gustavo Cancio, Stephen Castellano, Randolph Jackson, Mufeed Muhammad, Jerome Perkins and Paul Ratti, the Court denied in part and granted in part Defendants' motions for summary judgment.

The CMS Defendants now move pursuant to Local Civil Rule

---

[1] The CMS Defendants include CMS, Dr. Trevor Parks, Dr. James Neal, Bertha Robinson, and Carol Holt. The DOC Defendants include the DOC, William H. Fauver, Howard L. Beyer, Steven Pinchak, Terry Moore, Ronald Cathel, and Richard Switaj.

7.1(g) for reconsideration and clarification of the Orders regarding Plaintiffs Gustavo Cancio, Paul Ratti, Mufeed Muhammad, and Jerome Perkins.  In addition, Gustavo Cancio cross-moves for reconsideration of the Court's dismissal of his claims against Defendants Carol Holt and Bertha Robinson in connection with the alleged failure of those defendants to treat his chronic obstructive pulmonary disease.

The Court properly exercises jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is proper pursuant to 28 U.S.C. § 1391(b).

For the following reasons, the Court **grants** the CMS Defendants' motion with respect to the remaining claims of Gustavo Cancio, but **denies** the remainder of the motion for reconsideration and clarification.  The Court also **denies** Gustavo Cancio's cross-motion for reconsideration.

### BACKGROUND

The facts are fully set forth in the Court's Opinion and Orders filed on September 28, 2004 ("September 28, 2004 Opinion and Orders").  The facts necessary to this motion will be recited below as they relate to the CMS Defendants' legal arguments.

### DISCUSSION

In the District of New Jersey, a motion for reconsideration (also referred to as a motion for reargument) is governed by Local Civil Rule 7.1(g).  See S.C. ex rel. C.C. v. Deptford

3

Township Bd. of Ed., 248 F. Supp. 2d 368, 380 (D.N.J. 2003); In re Consol. Parlodel Litig., 22 F. Supp. 2d 320, 329 (D.N.J. 1998). Under Rule 7.1(g), relief should be granted "very sparingly." Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986).

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985); see also Imundo v. Pocono Palace, Inc., 2002 WL 31006143, at *1 (D.N.J. Aug. 14, 2002). The Court will grant a motion for reconsideration only where its prior decision overlooked a factual or legal issue that may alter the disposition of the matter. See Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987). "Thus, the motion may address only 'dispositive factual matters or controlling decisions of law' that were presented to, but not considered by, the court in the course of making the decision at issue." Yurecko v. Port Authority Trans-Hudson Corp., 279 F. Supp. 2d 606, 611 (D.N.J. 2003) (citing Resorts Int'l, Inc. v. Greate Bay Hotel & Casino, Inc., 830 F. Supp. 826, 831 (D.N.J. 1992)).

**I.  Gustavo Cancio**

Plaintiff Gustavo Cancio ("Cancio") suffered from chronic obstructive pulmonary disease ("COPD"), chronic kidney failure, and prostate cancer. In its September 28, 2004 Opinion and

4

Order, the Court granted summary judgment on Cancio's federal and pendent state law claims in favor of the CMS Defendants with regard to the treatment of Cancio's COPD and kidney problems, but denied summary judgment on his federal and pendent state law claims regarding the treatment of his prostate cancer.

### A. Reconsideration of Cancio's Remaining Claims with Respect to Defendants Holt and Robinson

Defendants Holt and Robinson allegedly ceased their involvement with EJSP, with Defendant CMS, and with Plaintiff Cancio in April 1998 and June 1998, respectively. Cancio's prostate cancer, however, was not detected until March 17, 1999. (See Sept. 28, 2004 Op. at 18.) Because Holt and Robinson stopped working for CMS before Cancio's prostate cancer was discovered, they ask the Court to reconsider its decision denying summary judgment as to Cancio's remaining claims--i.e. the federal and state law claims that relate to the treatment of his prostate cancer.

Cancio concedes that Holt and Robinson cannot be held liable for Cancio's remaining claims under the Court's holding: "It is true that Cancio's prostate cancer was not detected prior to 1999. Thus, under the Court's current holding, Robinson and Holt would not have been involved in the constitutionally inadequate medical care which gave rise to Cancio's remaining claims." (Pls.' Opp. Br. at 3.) Because of this concession, the Court's decision to deny summary judgment to Holt and Robinson on

5

Cancio's federal and state claims relating to the treatment of his prostate cancer was a manifest error of fact. In order to correct this error, the Court grants summary judgment in favor of Defendants Holt and Robinson with respect to Cancio's remaining Eighth Amendment and pendant state law claims relating to the treatment of his prostate cancer.

In opposition to Holt and Robinson's motion, Cancio cross-moves for reconsideration of the Court's decision to grant summary judgment in favor of Defendants with respect to Cancio's claims about the treatment of his COPD and kidney problems. The Court, however, will not reconsider this decision for two reasons.

First, Cancio's motion is untimely. Pursuant to Local Civil Rule 7.1(g), a motion for reconsideration must be "filed within 10 days after the entry of the order or judgment on the original motion." The September 28, 2004 Opinion and Orders were entered on the docket on September 29, 2004. Thus, Cancio's motion must have been filed by October 14, 2004.[2] Cancio did not file a separate motion for reconsideration within this period. On October 22, 2004, Plaintiffs requested an extension to file opposition to the CMS Defendants' motion for reconsideration. Although the Court granted this request, Plaintiffs never asked

---

[2] The computation of the 10-day period does not include weekends or legal holidays. See Fed. R. Civ. P. 6(a).

6

for an extension to file a formal motion of their own. Therefore, the inclusion of Cancio's request for reconsideration within Plaintiffs' opposition brief was inappropriate and untimely.

Second, "reconsideration motions may not be used to relitigate old matters or raise arguments or present evidence that could have been raised prior to entry of judgment." Imundo, 2002 WL 31006143, at *1. Cancio has not offered any new evidence in connection with his "motion," and the Court sees no reason to reconsider its decision to grant summary judgment to Defendants on Cancio's claims concerning the treatment of his COPD and kidney problems. Therefore, the Court denies Cancio's cross-motion for reconsideration.

### B. Reconsideration of Cancio's Remaining Claims with Respect to Defendants Neal, Parks, and CMS

Defendants CMS, Dr. James Neal ("Dr. Neal"), and Dr. Trevor Parks ("Dr. Parks") contend that the Court should have granted summary judgment in their favor with respect to Cancio's claims for the treatment of his prostate cancer. Specifically, they argue that the material facts are not in dispute because the facts presented by Plaintiffs' expert, Dr. Robert B. Greifinger ("Dr. Greifinger"), were wrong. CMS, Dr. Neal, and Dr. Parks claim that Dr. Greifinger erred in using 1999 or 2000 as the dates of the onset of Cancio's prostate cancer. Once corrected, they believe that they cannot be held liable for the treatment of

7

Cancio's prostate cancer.

Typically, the Court would not reconsider this decision because CMS, Dr. Neal, and Dr. Parks have not presented the Court with any evidence that the Court overlooked in the previous decision, nor have they presented the Court with any newly discovered evidence.  However, Cancio concedes that the September 28, 2004 Opinion limited his claims for treatment of his prostate cancer:

> As a review of the [September 28, 2004] Opinion makes clear, it is CMS's failure to properly treat the <u>second</u> occurrence of prostate cancer in 2001 upon which the Court based its holding that a reasonable jury could conclude that CMS had been deliberately indifferent to Cancio's prostate cancer.

(Pls.' Opp. Br. at 5.)  Therefore, the Court will clarify its previous decision and limit Cancio's claims against CMS, Dr. Neal, and Dr. Parks for the treatment of prostate cancer to these defendants' acts or omissions from January 1, 2001 to May 22, 2002, the date of Gustavo Cancio's death.

    **II.  Paul Ratti**

Plaintiff Paul Ratti ("Ratti") suffers from rheumatoid arthritis and degenerative joint disease in his knee.  Ratti also complains about the treatment of complications he suffered as a result of the repair of his right Achilles tendon in the early 1980s.  In its September 28, 2004 Opinion and Order, the Court granted summary judgment on Ratti's federal and pendent state law claims in favor of the CMS Defendants with regard to the

treatment of complications from surgery on Ratti's Achilles tendon.  The Court denied summary judgment on his federal and pendent state law claims regarding the treatment of his rheumatoid arthritis.

Defendants Holt, Robinson, Dr. Neal, and Dr. Parks request reconsideration of the Court's denial of summary judgment on Ratti's remaining claims for treatment of his rheumatoid arthritis.  Specifically, the defendants argue that the facts submitted by Dr. Greifinger regarding CMS's alleged eight month delay in providing Ratti with a knee brace were wrong.

The Court will not reconsider this decision.  Holt, Robinson, Dr. Neal, and Dr. Parks have not presented the Court with any evidence that the Court overlooked in the previous decision, nor have they presented the Court with any newly discovered evidence.  The defendants are merely trying to relitigate an issue that the Court has already considered.  Reconsideration "is improper when it is used 'to ask the Court to rethink what it had already thought through--rightly or wrongly.'"  Oritani S&L Ass'n v. Fidelity & Deposit, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (quoting Above the Belt v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)), rev'd on other grounds, 989 F.2d 635 (3d Cir. 1993).  Thus, the Court declines to reconsider its decision with respect to Ratti's claims for treatment of his rheumatoid arthritis, specifically the alleged

9

delay in receipt of a knee brace.

### III. Mufeed Muhammad

Plaintiff Mufeed Muhammad ("Muhammad") was incarcerated in EJSP from 1994 to 2000. During his incarceration, Muhammad complained of persistent cardiac problems, high blood pressure, an ear infection, back pain, nerve damage, numbness in his arm and hand, swelling in his face, mouth, and arm, a toe infection, and a deep skin infection.

In its September 28, 2004 Opinion and Order, the Court granted summary judgment on Muhammad's federal claims in favor of the CMS Defendants with regard to the treatment of Muhammad's ear, toe, and skin infections. The Court granted summary judgment on Muhammad's pendant state law claims with regard to the treatment of his ear, toe, and skin infections, back pain, nerve damage, and numbness in his hand. The Court denied summary judgment on his federal claims regarding the treatment of his cardiac problems, high blood pressure, back pain, nerve damage, and numbness in his hand. The Court denied summary judgment on his pendant state law claims in connection with the treatment of Muhammad's heart condition and high blood pressure.

**A.   Reconsideration of Muhammad's Claims for the Treatment of His Cardiac Problems and Hypertension with Respect to Defendant Holt**

As stated above, Defendant Holt allegedly ceased her employment with CMS in April 1998. In its September 28, 2004

10

Opinion, the Court notes that "[o]n October 8, 2004, Muhammad complained about chest pains. . ." (Sept. 28, 2004 Op. at 58.) From this statement, Holt infers that the Court concluded that Muhammad's cardiac problems and hypertension did not begin until October 1998, well after Holt left CMS and EJSP. Therefore, Holt requests that the Court reconsider its previous Opinion and grant summary judgment with respect to Muhammad's claims for the treatment of his cardiac problems and high blood pressure.

In response, Muhammad notes that the documentary evidence submitted with Plaintiffs' opposition to Defendants' motion for summary judgment contains a record of complaints by Muhammad between 1996 and 1998 claiming that he had difficulties obtaining medication for his hypertension. (Pls.' Opp. Br. at 9.) Defendant Holt was employed by CMS during the time of these complaints.

The CMS Defendants did not raise Holt's employment history in their motion for summary judgment. In light of Muhammad's opposition and his claims that he filed complaints while Holt was still employed by CMS, namely in 1996 and 1997, the Court will not consider Holt's new argument at this juncture. See Bowers v. Nat'l Collegiate Athletic Ass'n, 130 F. Supp. 2d 610, 613 (D.N.J. 2001) (motions for reconsideration "are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers"). The Court will not

11

reconsider the September 28, 2004 Opinion as that decision relates to Muhammad's claims against Defendant Holt.

> **B. Reconsideration of Muhammad's Claims for the Treatment of His (a) Back Pain and Nerve Damage and (b) His Cardiac Problems and Hypertension with Respect to Defendant Robinson**

Defendant Robinson makes the same argument for reconsideration of Muhammad's claims against her as Holt made above: Robinson claims that she was not employed during the period in which Muhammad's claims for (a) back pain and nerve damage and (b) cardiac problems and hypertension arose.

The CMS Defendants conceded in their reply brief that their motion used and relied upon incorrect employment dates for Robinson. (Defs.' Reply Br. at 3.) In fact, Robinson was employed at the time Muhammad's claims arose for (a) back pain and nerve damage. Therefore, the CMS Defendants have withdrawn this portion of their motion for reconsideration. (Id.)

With respect to Muhammad's claims against Robinson for (b) cardiac problems and hypertension, the Court denies this portion of the CMS Defendants' motion for reconsideration for the reasons set forth above in Section III(A) of this Opinion.

**IV. Jerome Perkins**

Plaintiff Jerome Perkins ("Perkins") suffers from vascular disease and prostate cancer, though Perkins does not complain of mistreatment of his prostate cancer. At times, Perkins also suffered from a hernia and rectal bleeding. In its September 28,

2004 Opinion and Order, the Court granted summary judgment on Perkins's federal and pendent state law claims in favor of the CMS Defendants with regard to the treatment of Perkins' rectal bleeding.  The Court denied summary judgment on his federal and pendent state law claims regarding the treatment of his hernia and vascular disease.

Defendant Robinson allegedly worked for CMS from January 1997 to June 1998.  Therefore, the CMS Defendants ask the Court to limit any of Perkins's claims against Robinson to this time frame.  Once again, the Court will not rethink its previous decision without any newly discovered evidence presented by the CMS Defendants.  For the same reasons stated in Sections III(A) and (B) above, the Court denies this portion of the CMS Defendants' motion for reconsideration.

### V. Application of the Scott-Neal Case

Defendant CMS requests reconsideration of the Court's denial of summary judgment on the issue of vicarious liability for state law claims.  In the September 28, 2004 Opinion, the Court relied upon Scott-Neal v. N.J. State Dept. of Corrs., 366 N.J. Super. 570 (N.J. Super. Ct. App. Div. 2004), in determining that CMS could be held vicariously liable under state tort law for the allegedly improper actions of independent contractors.  CMS argues that the Court misinterpreted and misapplied the Scott-Neal decision, and thus the Court should in fact grant summary

13

judgment in favor of CMS on the issue of vicarious liability.

CMS makes four arguments regarding Scott-Neal. First, CMS argues that CMS was granted summary judgment on the issue of vicarious liability by the Appellate Division in the Scott-Neal matter. Second, CMS argues that the standard for liability under 42 U.S.C. § 1983 should not be applied to a private cause of action such as this one. Third, CMS argues that the Appellate Division in Scott-Neal incorrectly applied West v. Atkins, 487 U.S. 42 (1988). Fourth, CMS argues that the Court's Order contravenes the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq.

As an initial matter, the Court notes that CMS has not provided the Court with any new evidence related to the Scott-Neal case, nor has there been an intervening change in the law. CMS is merely asking the Court to review and rethink case law that it has already thought through. Therefore, CMS has failed to meet the standard for reconsideration. See Oritani S&L Ass'n v. Fidelity & Deposit, 744 F. Supp. 1311, 1314 (D.N.J. 1990).

Even after reviewing the issue of vicarious liability, the Court finds that its decision did not constitute a manifest error of law. First, the issue of vicarious liability was not before the Appellate Division in Scott-Neal. See 366 N.J. Super. at 574 & n.1. In any event, the Appellate Division cast doubt on its earlier decision regarding CMS when it stated, "The present

14

record indicates that perhaps not all relevant information was made available to this court when that decision was reached." Id. Second, the "under color of state law" standard § 1983 applies because CMS effectively stepped into the shoes of the DOC; furthermore, CMS may be directly liable if one of its policies or customs is found to have violated Plaintiffs' constitutional rights. Third, the Court is in no position to review the propriety of the Appellate Divisions application of West v. Atkins. Fourth, the New Jersey Tort Claims Act does not apply where, as here, the defendant is not a public entity; in any event, CMS failed to raise this argument in previous submissions to the Court.

For the reasons stated above, the Court denies reconsideration of its application of Scott-Neal.

### VI. Clarification of Vicarious Liability with Respect to Independent Contractors and Outside Specialists

In providing treatment to Plaintiffs at EJSP, CMS employed both independent contractor physicians and, in some cases, consultant specialists. In its September 28, 2004 Opinion, the Court held that CMS may be vicariously liable for the actions and/or omissions of independent contractors when treating inmates at EJSP. CMS now asks the Court to clarify what it meant by "independent contractors"--specifically, whether that term includes consultant specialists.

The September 28, 2004 Opinion and Order addresses the issue

of CMS's potential vicarious liability, but it did not determine which doctors constitute "independent contractors." Any determination of which doctors in this case constitute independent contractors will depend on the facts presented at trial, and thus the Court will not make that determination at the summary judgment stage.

**VII. Tort Claim Notice**

The CMS Defendants now ask the Court to grant summary judgment with respect to all Plaintiffs' pendant state law claims because Plaintiffs allegedly failed to file a Tort Claim Notice pursuant to N.J.S.A. 59:8-1 et seq. The CMS Defendants have raised this argument for the first time on this motion for reconsideration. The Court refuses to consider this argument now, when the CMS Defendants could have raised it in their motion for summary judgment. See Koch Materials Co. v. Shore Slurry Seal, Inc., 209 F. Supp. 2d 418, 420 (D.N.J. 2002) ("In the absence of newly discovered evidence or intervening change in the law, a party cannot present on reconsideration a basis for decision it could have, but did not, raise in its initial motion.").

## CONCLUSION

For the foregoing reasons, the Court **grants** the CMS Defendants' motion with respect to the remaining claims of Gustavo Cancio: (1) The Court will enter summary judgment in

favor of Holt and Robinson with regard to Cancio's Eighth Amendment and pendent state law claims for the treatment of his prostate cancer.  (2) The Court will limit Cancio's claims against CMS, Dr. Neal, and Dr. Parks for the treatment of prostate cancer to the acts or omissions of CMS, Dr. Neal, and Dr. Parks from January 1, 2001 to May 22, 2002.

The Court, however, **denies** the remainder of the CMS Defendants' motion for reconsideration and clarification.  The Court also **denies** Gustavo Cancio's cross-motion for reconsideration.

An appropriate order follows.


Dated: June 29, 2005


                                        /s/ William G. Bassler
                                        WILLIAM G. BASSLER, U.S.S.D.J.